## Exhibit A

### *Interim Order*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| J.L. French Automotive Castings, Inc.,[1] | ) | Case No. 09-____ (____) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## INTERIM ORDER PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING THE DEBTORS TO (I) USE CASH COLLATERAL, (II) OBTAIN POSTPETITION FINANCING AND (III) PROVIDE ADEQUATE PROTECTION, AND (B) PROVIDING <u>NOTICE AND SCHEDULING OF FINAL HEARING</u>

Upon the motion, dated July 13, 2009 (the "<u>Motion</u>"),[2] of J.L. French Automotive Castings, Inc. ("<u>J.L. French</u>") and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases, for entry of an order (A) authorizing the Debtors to (I) use cash collateral, pursuant to section 363 of title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>"), (II) obtain postpetition financing pursuant to sections 361, 362 and 364 of the Bankruptcy Code and (III) provide adequate protection pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and (B) scheduling interim and final hearings pursuant to rule 4001(b) of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"), the Debtors sought the following relief:

---

[1] The Debtors in these cases along with the last four digits of each of the Debtors' federal tax identification numbers are: J.L. French Automotive Castings, Inc., (3670); French Holdings LLC, (0518); Nelson Metal Products LLC (4939); Allotech International LLC (5832); J.L. French LLC (8901); J.L. French Automotive, LLC (7075); Central Die, LLC (7793). The Debtors' headquarters and mailing address is: 3101 South Taylor Drive, Sheboygan, WI 53082.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion or in the DIP Credit Agreement (defined below), as applicable.

(i)     The Court's (defined below) authorization to obtain credit and incur debt pursuant to section 363 and section 364(c)(1), (2), (3) and (d)(1) of the Bankruptcy Code, as follows:

(a)     **Interim Financing - DIP Facilities**.  On an interim basis during the period (the "Interim Period") from the Closing Date through and including the earlier of 45 days after the Petition Date or the date of entry of a Final Order (as defined below), up to an aggregate principal amount of $15.0 million in the form of multiple-draw term loan facilities (the "DIP Facilities") may be advanced to J.L. French, as borrower (the "DIP Borrower"), and will be guaranteed by the other Debtors who are identified as "Guarantors" under the DIP Credit Agreement (the "DIP Guarantors").

(b)     **Final Financing – DIP Facilities**.  Upon entry of the Final Order, and subject to the terms and conditions of the DIP Financing Documents (as defined below), the DIP Facilities will be available to the DIP Borrower up to an aggregate principal amount of $15.0 million and will be guaranteed by the DIP Guarantors.

(c)     In addition to the benefits of section 503(b)(1) of the Bankruptcy Code, the DIP Facilities and any loans (or other extensions of credit) thereunder, (the "DIP Loans") shall, as set forth more fully below, be secured by valid, priming, perfected and enforceable liens (as defined in section 101(37) of the Bankruptcy Code) on all of the Debtors' assets and property (now owned and hereafter acquired) and proceeds thereof, pursuant to Bankruptcy Code sections 364(c)(2), 364(c)(3) and 364(d)(1), and have priority over payment of administrative expenses as provided in Bankruptcy Code section 364(c)(1).

(ii)     The Court's authorization to enter into, execute and deliver documentation evidencing the DIP Facilities including, (A) that certain DIP Credit Agreement (the "DIP Credit Agreement"), substantially in the form attached to the Motion, with the respective lenders party thereto (the "DIP Lenders"), and Wilmington Trust FSB ("Wilmington Trust"), as administrative agent and collateral agent in respect of the DIP Facilities (in such capacities, the "DIP Agent"),

2

and (B) all other documents, agreements and instruments to be executed and/or delivered in connection therewith or related thereto or contemplated thereby, this Interim Order and any Final Order (collectively with the DIP Credit Agreement, as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof, the "DIP Financing Documents").

(iii)    Authorize the use of proceeds of the DIP Facilities, in all cases in accordance with the Budget (as defined in the DIP Credit Agreement) and as otherwise provided in the DIP Financing Documents.

(iv)    Grant to the DIP Agent, for the benefit of the DIP Agent and DIP Lenders and any other parties referred to in the collateral documents (collectively, the "DIP Secured Parties") with respect to the respective DIP Obligations (as defined below), in accordance with the relative priorities among the DIP Facilities, the Prepetition Credit Facilities (as defined below) and the Adequate Protection Replacement Liens (as defined below), in each case as set forth more fully below (including in paragraph 2(e)), and subject to the Carve-Out (as defined below):

(a)    pursuant to section 364 (c)(1) of the Bankruptcy Code, an allowed superpriority administrative claim having recourse to all prepetition and postpetition property of the Debtors' estates (which, upon entry of the Final Order, will include Avoidance Actions (as defined below)) and proceeds thereof;

(b)    pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected first priority lien on all unencumbered property of the Debtors (now owned or hereafter acquired) (which, upon entry of the Final Order, will include Avoidance Actions) and proceeds thereof;

(c)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior lien on all property of the Debtors (now owned or hereafter acquired) and proceeds thereof that is subject to valid, perfected and unavoidable liens in existence as of the Petition Date or that is subject to valid liens in existence on the Petition Date that are

3

perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code; and

(d)     pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority senior priming lien (subject only to Prepetition Senior Liens (as defined below)) on all property of the Debtors (now owned or hereafter acquired) and proceeds thereof that is subject to any or all of the Primed Liens (as defined below). The aforesaid perfected first priority senior priming lien shall be senior in all respects to Primed Liens and any adequate protection liens granted hereunder in favor of the holders of any indebtedness secured by any liens described in any of such clauses, but shall be junior to any other valid, perfected and unavoidable liens in existence on the Petition Date or any other valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(v)     Authorize the use of "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral") in which any or all of the Prepetition Secured Parties (as defined below) have an interest.

(vi)     Grant, on the Petition Date, to the Prepetition Collateral Agents (as defined below) or, if applicable, the Prepetition Interest Rate Swap Counterparty, for the benefit of the Prepetition Secured Parties, in each case in accordance with the relative priorities among the DIP Facilities and the Prepetition Credit Facilities, as set forth more fully below, and subject to the Carve-Out, Adequate Protection Replacement Liens and Adequate Protection Superpriority Claims (as defined below), in each case, to the extent of any Diminution in Value (as defined in paragraph 4 below).

(vii)     Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Consent Agreement (as defined in the DIP Credit Agreement), DIP Financing Documents and this Interim Order.

(viii)   Schedule a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis and approve the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion.

(ix)   Waive any applicable stay (including under Rule 6004 of the Federal Rules of Bankruptcy Procedure) and provide for immediate effectiveness of this Interim Order.

The Court having considered the Motion, the Declaration of Thomas Musgrave in Support of First Day Motions, the DIP Facilities and the DIP Financing Documents, and the evidence submitted at the hearing on this Interim Order (the "Interim Hearing"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Bankruptcy Rules and the local rules of the Court, due and proper notice of the Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on _____ [__], 2009; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and is essential for the continued operation of the Debtors' businesses; and, subject to the terms hereof, there is adequate protection of the interests of holders of liens on the property of the estates on which liens are granted; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and/or good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.   **Petition Date**.   On July 13, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Cases") with the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors have continued in the management and operation of their business and property as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

B. **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for these Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Committee Formation**. No official committee of unsecured creditors has yet been appointed in the Cases.

D. **Notice**. The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors to (i) the Office of the United States Trustee for the District of Delaware, (ii) the United States Securities and Exchange Commission, (iii) the Office of the United States Attorney for the District of Delaware, (iv) the Internal Revenue Service, (v) the Debtors' forty (40) largest] unsecured creditors on a consolidated basis, (vi) counsel to the Prepetition Agents, (vii) all other parties with liens of record on assets of the Debtors as of the Petition Date, (viii) all parties who have requested notice in the Cases pursuant to Bankruptcy Rule 2002, and (ix) counsel to the DIP Agent (the "Notice Parties"), by telecopy, email, overnight courier and/or hand delivery. Under the circumstances, such notice of the Interim Hearing is due and sufficient notice and complies with Bankruptcy Rule 4001 under the circumstances, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

E. **Prepetition Secured Indebtedness.**

    (i)    **Prepetition First Lien Facilities**.

        (a)    **Prepetition First Lien Credit Agreement**.   J.L. French Automotive Castings, Inc., as borrower (the "Prepetition Borrower"), certain subsidiaries of Prepetition Borrower, as guarantors, certain lenders (the "Prepetition First Lien

Lenders"), Wilmington Trust (as successor to Goldman Sachs Credit Partners L.P.), as term loan administrative agent (in such capacity, the "Prepetition First Lien Term Loan Administrative Agent"), arranger, syndication agent and sole bookrunner, CapitalSource Bank, as revolving loan administrative agent (in such capacity, the "Prepetition First Lien Revolving Loan Administrative Agent," and together with the Prepetition First Lien Term Loan Administrative Agent, the "Prepetition First Lien Administrative Agents"), and Wilmington Trust (as successor to CapitalSource Finance LLC), as collateral agent (in such capacity, the "Prepetition First Lien Collateral Agent," and together with the Prepetition First Lien Administrative Agents, the "Prepetition First Lien Agents") are party to that certain Amended and Restated First Lien Credit and Guaranty Agreement, dated as of May 14, 2007, and amended and restated as of July 12, 2009 (as further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition First Lien Credit Agreement," and the credit facilities thereunder, the "Prepetition First Lien Credit Facilities").

(b) **Prepetition First Lien Credit Parties**. The Prepetition Borrower is liable as a primary obligor for repayment of the Loan (as defined in the Prepetition First Lien Credit Agreement, and as used herein, the "Prepetition First Lien Loan"). Certain subsidiaries of J.L. French (the "Prepetition First Lien Guarantors," and together with the Prepetition Borrower, the "Prepetition First Lien Credit Parties") have guaranteed the Prepetition First Lien Obligations (as defined below) owed by the Prepetition Borrower

(c) **Prepetition First Lien Collateral**. Each Prepetition First Lien Credit Party has pledged to Prepetition First Lien Collateral Agent, for the Secured Parties (as defined in the Prepetition First Lien Credit Agreement, and as used herein, the "Prepetition First Lien Secured Parties") substantially all of its assets and property (the "Prepetition First Lien Collateral") as security for repayment of the Prepetition First Lien Obligations pursuant to, among other things, (I) that certain Pledge and Security

7

Agreement, dated as of May 14, 2007, and as amended and restated as of July 12, 2009 and (II) certain Mortgages (each as defined in the Prepetition First Lien Credit Agreement and collectively, the "Prepetition First Lien Security Documents").

(d)     **Prepetition First Lien Secured Parties' Consent to Subordination of Liens**.  Pursuant to the Prepetition First Lien Credit Agreement, the Requisite Lenders (as defined therein), on behalf of all Prepetition First Lien Secured Parties, have consented to the subordination of all liens securing the Prepetition First Lien Obligations and all Adequate Protection Superpriority Claims granted with respect to the Prepetition First Lien Obligations to the DIP Liens and the DIP Superpriority Claims.

(ii)     **Prepetition Second Lien Facilities**.

(a)     **Prepetition Second Lien Credit Agreement**.     Prepetition Borrower, certain subsidiaries of Prepetition Borrower, as guarantors, certain lenders (the "Prepetition Second Lien Lenders"), the Bank of New York (as successor to Goldman Sachs Credit Partners L.P.), as administrative agent (in such capacity, the "Prepetition Second Lien Administrative Agent," and together with the Prepetition First Lien Administrative Agents, the "Prepetition Administrative Agents"), and Goldman Sachs Credit Partners L.P., as collateral agent (in such capacity, the "Prepetition Second Lien Collateral Agent," and together with (i) the Prepetition First Lien Collateral Agent, the "Prepetition Collateral Agents" and (ii) the Prepetition Second Lien Administrative Agent, the "Prepetition Second Lien Agents;" as used herein, "Prepetition Agents" means the Prepetition First Lien Agents and the Prepetition Second Lien Agents) are party to that certain Second Lien Credit and Guaranty Agreement, dated as of May 14, 2007, and amended and restated as of July 12, 2009 (as further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition Second Lien Credit Agreement," and together with the Prepetition First Lien Credit Agreement, the "Prepetition Credit Agreements;" and the credit facility

thereunder, the "Prepetition Second Lien Credit Facility," and together with the Prepetition First Lien Credit Facilities, the "Prepetition Credit Facilities").

(b) **Prepetition Second Lien Credit Parties**. The Prepetition Borrower is liable as a primary obligor for repayment of the Loan (as defined in the Prepetition Second Lien Credit Agreement, and as used herein, the "Prepetition Second Lien Loan"). Certain subsidiaries of J.L. French (the "Prepetition Second Lien Guarantors," and together with the Prepetition Borrower, the "Prepetition Second Lien Credit Parties") have guaranteed the Prepetition Second Lien Obligations (as defined below) owed by the Prepetition Borrower.

(c) **Prepetition Second Lien Collateral**. Each Prepetition Second Lien Credit Party has pledged to Prepetition Second Lien Collateral Agent, for the Secured Parties (as defined in the Prepetition Second Lien Credit Agreement, the "Prepetition Second Lien Secured Parties," and together with the Prepetition First Lien Secured Parties, the "Prepetition Lender Secured Parties", and the Prepetition Lender Secured Parties, and solely to the extent, if any, that the Prepetition Interest Rate Swap Claims are secured by existing, valid, perfected, enforceable and non-avoidable liens any DIP Collateral, the Prepetition Interest Rate Swap Counterparty, collectively, the "Prepetition Secured Parties") substantially all of its assets and property (the "Prepetition Second Lien Collateral," and together with the Prepetition First Lien Collateral, the "Prepetition Collateral") as security for repayment of the Prepetition Second Lien Obligations pursuant to, among other things, (I) that certain Pledge and Security Agreement, dated as of May 14, 2007, and as amended and restated as of July 12, 2009, and (II) certain Mortgages (each as defined in the Prepetition Second Lien Credit Agreement and collectively, the "Prepetition Second Lien Security Documents").

(d) **Prepetition Second Lien Secured Parties' Consent to Subordination of Liens**. Pursuant to the Prepetition Second Lien Credit Agreement, the Requisite Lenders (as defined therein), on behalf of all Prepetition Second Lien Secured

Parties, have consented to the subordination of all liens securing the Prepetition Second Lien Obligations and all Adequate Protection Superpriority Claims granted with respect to the Prepetition Second Lien Obligations to the DIP Liens and the DIP Superpriority Claims.

(iii) **Intercreditor Agreement**. J.L. French, Prepetition First Lien Collateral Agent and Prepetition Second Lien Collateral Agent (Prepetition First Lien Collateral Agent and Prepetition Second Lien Collateral Agent, collectively, the "Prepetition Collateral Agents") are party to that certain Intercreditor Agreement dated as of May 14, 2007 (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof, the "Prepetition Intercreditor Agreement"), pursuant to which the parties thereto agreed, among other things, that the liens granted under the Prepetition First Lien Security Documents to the Prepetition First Lien Collateral Agent for the Prepetition First Lien Secured Parties, on all of the Prepetition Collateral are senior and prior to the liens thereon granted under the Prepetition Second Lien Security Documents to the Prepetition Second Lien Collateral Agent for the Prepetition Second Lien Secured Parties.

F. **Prepetition Unsecured Interest Rate Indebtedness**. The Prepetition Borrower is indebted to Morgan Stanley Capital Services, Inc and/or an affiliate (collectively, the "Prepetition Interest Rate Swap Counterparty") thereof pursuant to certain interest rate swap transactions reflected by the three Confirmations dated July 19, 2006 and the ISDA 2002 Master Agreement dated July 13, 2006, entered into by and between J.L. French Automotive Castings, Inc. and Morgan Stanley Capital Services, Inc. (together with all other related agreements and documents, collectively, the "Prepetition Interest Rate Swap Agreements"). The Debtors assert that all claims of the Prepetition Interest Rate Swap Counterparty in respect of the Prepetition Interest Rate Swap Agreements (the "Prepetition Interest Rate Swap Claims") are unsecured because, among other reasons, (x) the Prepetition Interest Rate Swap Agreements do not grant or purport to grant a security interest in any assets of the Debtors as security for any Prepetition Interest Rate Swap Claims, (y) there are no UCC filings or other perfection documents or notices

of record, and (z) the Prepetition Interest Rate Swap Claims do not constitute Prepetition First Lien Obligations or Prepetition Second Lien Obligations.

G. **Stipulations as to Prepetition Credit Facilities**. Subject to Paragraph 6, the Court finds that:

(i) **Prepetition First Lien Obligations**. As of the Petition Date, the Debtors were indebted and liable to the Prepetition First Lien Agents and the Prepetition First Lien Lenders, without objection, defense, counterclaim or offset of any kind under the Credit Documents (as defined in the Prepetition First Lien Credit Agreement, the "Prepetition First Lien Credit Documents"), in the aggregate principal amount of (a) not less than approximately U.S. $49,608,747.10 in respect of the Revolving Loans (as defined in the Prepetition First Lien Credit Agreement), including approximately U.S. $5,158,747.10 in respect of the Letter of Credit Usage (as defined in the Prepetition First Lien Credit Agreement) (the existing letters of credit to which such Letter of Credit Usage relates, the "Existing Letters of Credit"), (b) not less than approximately U.S. $153,859,500.04 in respect of the Term Loans (as defined in the Prepetition first Lien Credit Agreement), and (c) interest in respect of the Obligations (as defined in the Prepetition First Lien Credit Agreement) and fees, expenses (including any attorneys', accountants', consultants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Prepetition First Lien Credit Documents), charges and other Obligations (as defined in the Prepetition First Lien Credit Agreement) incurred in connection therewith as provided in the Prepetition First Lien Credit Documents (items (a)-(c), collectively, the "Prepetition First Lien Obligations").

(ii) **Prepetition Second Lien Obligations**. As of the Petition Date, the Debtors were indebted and liable to the Prepetition Second Lien Agents and the Prepetition Second Lien Lenders, without objection, defense, counterclaim or offset of any kind under the Credit Documents (as defined in the Prepetition Second Lien Credit Agreement, the "Prepetition Second Lien Credit Documents"), in the aggregate principal amount of (a) not less than approximately U.S. $60,248,713.28 in respect of the Term Loans (as defined in the Prepetition

Second Lien Credit Agreement), and (b) interest in respect of the Obligations (as defined in the Prepetition Second Lien Credit Agreement) and fees, expenses (including any attorneys', accountants', consultants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Prepetition Second Lien Loan Documents), charges and other Obligations (as defined in the Prepetition Second Lien Credit Agreement) incurred in connection therewith as provided in the Prepetition Second Lien Credit Documents (items (a) and (b), collectively, the "Prepetition Second Lien Obligations").

(iii) **Enforceability, etc. of Prepetition Obligations**. The Prepetition First Lien Obligations and the Prepetition Second Lien Obligations (collectively, the "Prepetition Obligations") are (a) legal, valid, binding, and enforceable against each applicable Debtor and (b) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise (except for the lien subordination contemplated herein and in the Prepetition Intercreditor Agreement). The Debtors do not have, hereby forever release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Obligations, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, against any of the Prepetition Lender Secured Parties and their respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys.

(iv) **Enforceability, etc. of Prepetition Liens**. The liens and security interests (the "Prepetition Liens") granted in favor of the Prepetition Collateral Agents for the respective Prepetition Lender Secured Parties under the Prepetition First Lien Security Documents and the Prepetition Second Lien Security Documents (collectively, the "Prepetition Security Documents") on the Prepetition Collateral are legal, valid, enforceable, non-avoidable, and duly perfected and are not subject to avoidance, attack, offset, re-characterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise (except for the lien subordination contemplated herein and in the Prepetition Intercreditor Agreement), and, as

of the Petition Date, and without giving effect to this Interim Order, the Debtors are not aware of any liens or security interests having priority over the Prepetition Liens other than Prepetition Senior Liens. The respective Prepetition Liens were granted to the Prepetition Collateral Agents for the respective Prepetition Lender Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making or the loans and/or commitments secured thereby.

H. **Need for Postpetition Financing and Use of Collateral**. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). Good cause has been shown for entry of this Interim Order. An immediate need exists for the Debtors to obtain funds in order to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the DIP Facilities and the use of Cash Collateral. In the absence of the availability of such funds in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors, their estates, their creditors and equity holders would occur. Further, the possibility for a successful reorganization and/or sale of all or any material portion of the Debtors' assets, as a going concern or otherwise would be jeopardized in the absence of the availability of funds in accordance with the terms of the DIP Financing Documents.

I. **No Credit Available on More Favorable Terms**. The Debtors have been unable to obtain (a) adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), (c) credit for money borrowed secured solely by a lien on property of the Debtors' estates that is not otherwise subject to a lien, or (d) credit for money borrowed secured by a junior lien on property of the Debtors' estates which is subject to a lien, in each case, on more favorable terms and conditions than those provided in the DIP Financing Documents and this Interim Order. The

Debtors are unable to obtain credit for borrowed money without granting the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below) to the DIP Secured Parties.

J.    **Use of Proceeds of the DIP Facilities**.  Proceeds of the DIP Facilities (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Documents, and this Interim Order, and in a manner substantially consistent with the Budget and as otherwise provided in the DIP Financing Documents; provided, that no more than $10,000 of the proceeds of the DIP Facilities, DIP Loans or DIP Collateral (as defined below), or Cash Collateral, may be used by any Committee (as defined below) to investigate the Prepetition Liens and the Prepetition Obligations.

K.    **Application of Proceeds of DIP Collateral**.  All proceeds of the sale or other disposition of the DIP Collateral shall be applied in accordance with the terms and conditions of the DIP Financing Documents.

L.    **Adequate Protection for Secured Parties**.    The Prepetition Agents have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses.  The Prepetition Agents for the respective Prepetition Lender Secured Parties have agreed to permit the Debtors to use the respective Prepetition Collateral, including the Cash Collateral, for the period set forth herein, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 363(m) of the Bankruptcy Code. All of the Prepetition Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code for any Diminution in Value.  Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and use of the Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition Agents' consent thereto; provided that nothing herein shall limit the rights of the Prepetition Secured Parties

(subject to obtaining the consent of the "Requisite Lenders", as defined in the Prepetition First Lien Credit Agreement or the Prepetition Second Lien Credit Agreement, as the case may be) to seek new or different adequate protection (so long as such new or different adequate protection shall at all times be subordinate and junior to the DIP Obligations, the DIP Liens and the DIP Superpriority Claim).

M. **Section 552**. In light of the subordination of their liens and superpriority claims to (i) the Carve-Out in the case of the DIP Secured Parties, and (ii) the Carve-Out and the DIP Liens in the case of the Prepetition Secured Parties, each of the DIP Secured Parties and the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

N. **Extension of Financing**. The DIP Secured Parties have indicated a willingness to provide financing to certain of the Debtors and certain non-Debtor affiliates in accordance with the DIP Credit Agreement and other DIP Financing Documents. The DIP Secured Parties are good faith financiers. The DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facilities will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

O. **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i) The terms and conditions of the DIP Facilities, the DIP Credit Agreement and the other DIP Financing Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii) the DIP Facilities and the other DIP Financing Documents were negotiated in good faith and at arms' length between the Debtors and the DIP Secured Parties; and

15

(iii)     the use of the proceeds to be extended under the DIP Facilities will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

P.     **Relief Essential; Best Interest**.  The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and personal property.  It is in the best interest of Debtors' estates that the Debtors be allowed to establish the DIP Facilities contemplated by the DIP Credit Agreement and other DIP Financing Documents.

Q.     **Entry of Interim Order**.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Interim Hearing, and with the consent of the Debtors, the Prepetition Secured Parties and the DIP Secured Parties, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted**.  The Motion is granted in accordance with the terms and conditions set forth in this Interim Order and the other DIP Financing Documents.  Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.     **DIP Financing Documents**.

(a)     **Approval of Entry Into DIP Financing Documents**.  The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Documents, and to execute and

deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors under the DIP Facilities and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Documents and to take all such action (corporate or otherwise) as is required to cause their non-Debtor affiliates organized outside the United States to execute, deliver and perform under the DIP Financing Documents to which they are intended to be party. The Debtors are hereby authorized and directed to do and perform all acts, and to pay all principal, interest, fees, expenses and other amounts described in the DIP Credit Agreement and all other DIP Financing Documents as such become due, including, without limitation, closing fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Credit Agreement (collectively with all other "Obligations" under and as defined in the DIP Credit Agreement, the "DIP Obligations"), which amounts shall not otherwise be subject to further approval of this Court. Upon execution and delivery, the DIP Financing Documents shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b)     **Authorization to Borrow, etc**. In order to enable them to continue to operate their businesses, during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Financing Documents, and the Budget, the DIP Borrower is hereby authorized under the DIP Facilities to borrow up to an aggregate principal amount of $15.0 million (the actual principal amount at any time being subject to the conditions set forth in the DIP Credit Agreement), until entry of the Final Order with respect to the Motion and, thereafter, in such amounts as may be permitted by such Final Order and the DIP Financing Documents. At the option of the DIP Agent, and subject in all respects to the terms of the DIP Financing Documents and Section 6.1(b) of the DIP Credit Agreement, the DIP Borrower may borrow under the DIP Facilities for the purpose of making intercompany advances ("Intercompany DIP Loan Advances") to non-Debtor affiliates solely to the extent of accounts receivable arising from the sale of products and services to the Spanish subsidiaries in

the ordinary course of business that, together with any pre-petition accounts receivable owed by the Spanish subsidiaries to any or all of the Debtors, does not exceed $105,000 in the aggregate at any time. All such borrowings shall be guaranteed by the DIP Guarantors, and the borrowings by the DIP Borrower shall be guaranteed by each of the Debtors as, and to the extent, provided by the DIP Financing Documents.

(c)  **Conditions Precedent**.  During the Interim Period, the DIP Secured Parties shall have no obligation to make any DIP Loan or any other financial accommodations under the DIP Credit Agreement unless the conditions precedent to make such loans or financial accommodations under the DIP Credit Agreement have been satisfied in full or waived in accordance with the DIP Credit Agreement.

(d)  **DIP Liens**.  Effective immediately upon the entry of this Interim Order, and subject to the relative priorities among the DIP Facilities, the Adequate Protection Superpriority Claims and Adequate Protection Replacement Liens, and the Prepetition Credit Facilities, in each case as set forth more fully in this Interim Order (including in subparagraph (e) of this paragraph), the DIP Collateral Agent (as provided in the DIP Financing Documents and for the ratable benefit of the DIP Secured Parties) is hereby granted the following security interests and liens (which shall immediately, and without any further action by any Person, be valid, binding, permanent, perfected, continuing, enforceable and non-avoidable) on all now owned or hereafter acquired property of the Debtors including, without limitation, all unencumbered cash, any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before, on or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, tradenames, other intellectual property, equity interests, all other Collateral (as defined in the DIP Credit Agreement) and proceeds of the foregoing (collectively referred to as the "DIP Collateral," and all such liens and security interests granted to the DIP Collateral Agents as provided in the DIP Financing Documents and for the ratable benefit of the

DIP Secured Parties (in accordance with subparagraph (e) of this paragraph) pursuant to this Interim Order and the DIP Financing Documents, the "DIP Liens"):

(I)     pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected first priority lien on all unencumbered DIP Collateral and, upon entry of the Final Order, the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar state law and the proceeds thereof ("Avoidance Actions"), whether received by judgment, settlement or otherwise;

(II)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior lien upon all DIP Collateral that is subject to (x) valid and perfected and unavoidable liens in existence on the Petition Date and which are identified on Schedule 6.2 of the DIP Credit Agreement, or (y) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (including, without limitation, the liens in favor of the Prepetition First Lien Collateral Agent (but not the Prepetition Second Lien Collateral Agent) on the Glasgow Facility and the Glasgow Facility Proceeds), other than liens which are expressly stated to be primed by the liens to be granted to the DIP Agent described in clause (III) below (the "Prepetition Senior Liens"); and

(III)   pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all DIP Collateral that is senior to (x) the existing liens in favor of the Prepetition Lender Secured Parties securing the Prepetition Obligations (other than the liens in favor of the Prepetition First Lien Collateral Agent (but not the Prepetition Second Lien Collateral Agent) on the Glasgow Facility and the Glasgow Facility Proceeds), (y) any existing liens in favor of the Prepetition Interest Rate Swap Counterparty securing the Prepetition Interest Rate Swap Claims, or (z) any existing liens in favor of any other secured person or entity (other than the Prepetition Senior Liens) (the liens referenced in clauses (x), (y) and (z), collectively, the "Primed Liens"), which Primed Liens shall be primed by and made subject and subordinate to the perfected first priority senior priming liens to be granted to the DIP Collateral Agent, which senior priming liens in favor of the DIP Collateral Agent shall also prime any liens granted after the Petition Date to provide adequate protection in respect of any of the Primed Liens.

(e)     **DIP Lien Priority**.  Notwithstanding anything to the contrary contained in this Interim Order or the other DIP Financing Documents, and for the avoidance of doubt, the

DIP Liens granted to the DIP Collateral Agent for the DIP Secured Parties shall in each and every case be first priority senior liens, subject only to the Prepetition Senior Liens and in the event of the occurrence and during the continuance of an Event of Default or Default (each as defined in the DIP Financing Documents), or both, shall also be subject to the Carve-Out. The DIP Liens and the DIP Superpriority Claims shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy code or (ii) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (iii) any intercompany or affiliate liens of the Debtors. The DIP Liens shall be subject to the liens in favor of the Prepetition First Lien Collateral Agent (but not the Prepetition Second Lien Collateral Agent) on the Glasgow Facility and the Glasgow Facility Proceeds.

(f) **Other Provisions Relating to the DIP Collateral**. The DIP Collateral Agent may, at any time and at its election (determined in accordance with the terms of the applicable DIP Financing Documents) include in the DIP Collateral up to one hundred percent (100%) of the equity interests of foreign subsidiaries owned by the Debtors, and upon such election such equity interests will be deemed to be part of the DIP Collateral for all purposes hereunder as of the Petition Date. The DIP Liens granted by the Debtors shall secure all of the DIP Obligations. The DIP Liens shall not be made subject to or *pari passu* with any lien or security interest (other than the Prepetition Senior Liens or the Carve-Out) by any court order heretofore or hereafter entered in the Cases and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Cases"), and/or upon the dismissal of any of the Cases. The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, or, if approved in the Final Order, section 506(c) of the Bankruptcy Code.

(g)    **Enforceable Obligations**.  The DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with their terms.  No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Financing Agreements or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(h)    **Protection of DIP Secured Parties and Other Rights**.  From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facilities only for the purposes specifically set forth in the DIP Credit Agreement and this Interim Order and in compliance with the Budget.

(i)    **Superpriority Administrative Claim Status**.

(I)    The DIP Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code, shall at all times constitute an allowed superpriority administrative expense claims against each of the Debtors (the "DIP Superpriority Claims") with priority over any and all administrative expenses, adequate protection claims, diminution claims (including the Adequate Protection Superpriority Claims) and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof, including, without limitation, (subject to the entry of the Final Order) all Avoidance

Actions, subject only to the payment of the Carve-Out to the extent specifically provided for herein.

(II)     Other than as provided in the DIP Credit Agreement and this Interim Order with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Liens and the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.

(j)     Protection of DIP Lenders' Rights. So long as any DIP Obligations are outstanding or the DIP Lenders have any Commitment under the DIP Financing Documents, then the Prepetition Secured Parties shall (i) take no action to foreclose upon or recover in connection with the liens granted pursuant to the applicable Prepetition Credit Documents or this Interim Order, (ii) be deemed to have consented to any release of DIP Collateral authorized under the DIP Financing Documents, and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of liens or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii) the DIP Collateral Agent files financing statements or other documents to perfect the DIP Liens, or as may be required by applicable law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date. Notwithstanding anything in this Paragraph 2(j) to the contrary, the Prepetition First Lien Agents, on behalf of the Prepetition First Lien Lenders, may enforce their respective rights to receive the adequate protection payments set forth in Paragraph 4(c)(I) of this Interim Order (collectively, the "Adequate Protection Payments") if such Adequate Protection Payments to be made pursuant to Paragraph 4(c)(I) of this Interim Order are not made for any reason, including, without limitation by reason of a Termination Event; provided, however, that if (A) an Adequate Protection Payment remains due and owing to the Prepetition First Lien Revolving Loan Administrative Agent or the Prepetition Revolving Lender for more than sixty (60) days following the date on which the

22

Prepetition First Lien Revolving Loan Administrative Agent notifies in writing the Debtors, the DIP Agent and the Prepetition First Lien Term Loan Administrative Agent that such Adequate Protection Payment had not been made in accordance with the terms of the Interim Order; and (B) (x) neither the DIP Agent nor the Lenders is diligently enforcing (or, if applicable, seeking relief from the automatic stay to enforce) its rights with respect to a material portion of the DIP Collateral, and (y) the Debtors either have not delivered a commercially reasonable plan to the DIP Agent and the Prepetition First Lien Agents for selling or liquidating all or substantially all of their assets and setting forth a timetable (not to exceed nine months) for effectuating such sale and/or liquidation, or are not diligently pursuing the sale or liquidation of the Prepetition First Lien Collateral in a commercially reasonable manner acceptable to the DIP Agent, then the Prepetition First Lien Revolving Loan Administrative Agent may seek relief from the automatic stay to enforce its rights against the Prepetition First Lien Collateral, and upon obtaining relief from the automatic stay, may enforce its rights against the Prepetition First Lien Collateral, subject to (1) the other Prepetition First Lien Secured Parties', the DIP Agent's, the Lenders' and the Debtors' respective rights to contest such relief from stay motion; and (2) the Prepetition First Lien Revolving Loan Administrative Agent's obligation to turn over any proceeds of such collateral to the DIP Agent for application to the DIP Obligations until all DIP Obligations have been paid in full in cash and all financing commitments under the DIP Credit Documents have expired or terminated.

3. **Authorization to Use Cash Collateral and Proceeds of DIP Financing Documents**. Pursuant to the terms and conditions of this Interim Order, the DIP Facilities and the DIP Financing Documents, and in a manner consistent with the Budget (as the same may be modified, supplemented or updated from time to time consistent with the terms and conditions of the DIP Credit Agreement), (a) each Debtor is authorized to use the advances under the DIP Credit Agreement, and (b) each Debtor is authorized to use all Cash Collateral of the Prepetition Secured Parties, provided that the Prepetition Secured Parties are granted adequate protection as hereinafter set forth. The Debtors' right to use the extensions of credit under the DIP Credit

Agreement and Cash Collateral shall terminate upon notice being provided by the DIP Agent to that effect at any time upon or after (i) the occurrence and continuation of any Event of Default as set forth in the DIP Credit Agreement, or (ii) the termination of the DIP Credit Agreement. None of the Debtors shall sell, transfer, lease or otherwise dispose of any of the DIP Collateral (or any proceeds thereof) outside the ordinary course of business, except as permitted in the DIP Financing Documents (subject to any required Court approval).

4. **Adequate Protection for Prepetition Secured Parties**. As adequate protection for the respective interests of the Prepetition Secured Parties in the respective Prepetition Collateral (including Cash Collateral) for, and in an aggregate amount equal to the diminution in value (collectively, "Diminution in Value") of such interest from and after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code, whether or not resulting from the use, sale or lease by the Debtors of the Prepetition Collateral (including Cash Collateral), the granting of the DIP Liens, the subordination of the Prepetition Liens thereto and to the Carve-Out, or the imposition or enforcement of the automatic stay of section 362(a), the Prepetition Secured Parties shall receive adequate protection as follows:

(a) **Adequate Protection Replacement Liens**. Solely to the extent of the Diminution in Value, the Prepetition Secured Parties shall have pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, replacement security interests in and liens upon all of the DIP Collateral, including, upon entry of the Final Order, any Avoidance Actions (the "Adequate Protection Replacement Liens"), provided that (i) the Adequate Protection Replacement Liens of the Prepetition Second Lien Secured Parties shall be junior and subordinate to the Adequate Protection Replacement Liens of the Prepetition First Lien Secured Parties, (ii) all Adequate Protection Replacement Liens of the Prepetition Secured Parties shall be junior and subordinate to the DIP Liens, and (iii) all Adequate Protection Replacement Liens of the Prepetition Secured Parties shall be junior and subordinate to the Prepetition Senior Liens (but only with respect to property that was encumbered by Prepetition Senior Liens on the Petition Date) and the Carve-Out, as provided more fully herein.

(b)     **Adequate Protection Superpriority Claims**.  Solely to the extent that the Adequate Protection Replacement Liens have failed to provide adequate protection, and in such event solely to the extent of any Diminution in Value not adequately protected by such Adequate Protection Replacement Liens, the Prepetition Secured Parties shall have, subject to the payment of the Carve-Out, allowed superpriority administrative expense claims (the "Adequate Protection Superpriority Claims") as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the DIP Superpriority Claims and payable from and having recourse to all DIP Collateral; provided, that (i) the Adequate Protection Superpriority Claims of the Prepetition Second Lien Secured Parties shall be junior and subordinate to the Adequate Protection Superpriority Claims of the Prepetition First Lien Secured Parties, (ii) the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of their Adequate Protection Superpriority Claims unless and until the DIP Obligations have indefeasibly been paid in cash in full and all Commitments under the DIP Financing Documents have been terminated or expired, and (iii) the Adequate Protection Superpriority Claims granted to Prepetition Secured Parties may be impaired pursuant to a Plan (as defined below) with the vote of the applicable class of the holders of such claims that satisfies the requirements of section 1126 of the Bankruptcy Code.

(c)     **Adequate Protection Payments, etc.**

(I)     Promptly upon receipt of invoices therefor, the Prepetition First Lien Agents shall receive from the Debtors current cash payments of all reasonable fees and expenses payable to the Prepetition First Lien Agents under the Prepetition First Lien Credit Facilities including, without limitation, letter of credit fees, reasonable fees and disbursements of counsel (including local and foreign counsel), financial advisors and other consultants for the Prepetition First Lien Agents. The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential or sensitive information).

In addition to the payments set forth above; all Revolving Loans (as defined in the Prepetition First Lien Credit Agreement) shall bear interest at the non-default rate as set forth in the Prepetition First Lien Credit Agreement and such interest shall be paid by the Debtors until the occurrence of a Termination Event (as defined in the Consent Agreement) to the Prepetition First Lien Revolving Loan Administrative Agent, on behalf of the Prepetition First Lien Revolving Lenders, in accordance with the Prepetition First Lien Credit Agreement. Notwithstanding anything to the contrary herein, except as otherwise ordered by this Court, no Prepetition First Lien Agent or Prepetition First Lien Lender shall be entitled to payment of any fees and expenses (including the fees and disbursements of counsel) incurred in challenging, or in relation to the challenge of, any actions taken or supported by the Requisite Lenders (as defined in the Prepetition First Lien Credit Agreement) in accordance with the provisions of the Prepetition First Lien Credit Documents or directions or instructions issued by the Requisite Lenders (as defined in the Prepetition First Lien Credit Agreement) in accordance with the provisions of the Prepetition First Lien Credit Documents.

(II)     Promptly upon receipt of invoices therefore and until the occurrence of a Termination Event (as defined in the Consent Agreement), the Prepetition Second Lien Agents shall receive from the Debtors current cash payments of all reasonable fees and expenses payable to the Prepetition Second Lien Agents under the Prepetition Second Lien Credit Facility including, without limitation, reasonable fees and disbursements of counsel (including local and foreign counsel), financial advisors and other consultants (all such fees and disbursements incurred after the Petition Date, collectively, the "**Second Lien Professional Fees**") for the Prepetition Second Lien Agents (collectively, the "**Second Lien Adequate Protection Payments**"); provided, however, that (i) Second Lien Professional Fees shall be subject to a cap of $225,000 and (ii) upon the

occurrence of a Termination Event (as defined in the Consent Agreement), the Debtors shall immediately cease making the Second Lien Adequate Protection Payments to the Prepetition Second Lien Agents for fees and expenses incurred after such Termination Event; provided that the Debtors shall pay all Second Lien Adequate Protection Payments incurred on or prior to a Termination Event. Nothing herein shall prevent the Prepetition Second Lien Secured Parties from seeking additional or supplemental adequate protection in any form, including, without limitation, in the form of cash payments of all reasonable fees and expenses payable to the Prepetition Second Lien Agents under the Prepetition Second Lien Credit Facility or otherwise upon the occurrence of a Termination Event and the Debtors and all other parties in interest reserve the right to contest or otherwise object to the additional or supplemental adequate protection requested by the Prepetition Second Lien Secured Parties. The invoices to be submitted by the Prepetition Second Lien Agents shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential or sensitive information). Notwithstanding anything to the contrary herein, except as otherwise ordered by this Court, no Prepetition Second Lien Agent or Prepetition Second Lien Lender shall be entitled to payment of any fees and expenses (including the fees and disbursements of counsel) incurred in challenging, or in relation to the challenge of, any actions taken or supported by the Requisite Lenders (as defined in the Prepetition Second Lien Credit Agreement) in accordance with the provisions of the Prepetition Second Lien Credit Documents or directions or instructions issued by the Requisite Lenders (as defined in the Prepetition Second Lien Credit Agreement) in accordance with the provisions of the Prepetition Second Lien Credit Documents.

(III)  Notwithstanding anything herein to the contrary, all indemnification obligations specified in the Prepetition First Lien Credit Agreement as owing by the Debtors to the Prepetition First Lien Agents shall have the same lien and claim priority as the DIP Obligations in respect of the DIP Facilities.

(d)  **Monitoring of Prepetition Collateral**.  Without limiting the foregoing, the Prepetition First Lien Agents (subject to obtaining the prior consent of the Requisite Lenders under and as defined in the applicable Prepetition Credit Agreement) and the DIP Collateral Agent shall be permitted to retain expert consultants and financial advisors at the expense of the Debtors, which consultants and advisors shall be given reasonable access for purposes of monitoring the businesses of the Debtors and the value of the Prepetition Collateral.  The Debtors shall concurrently provide the Prepetition Second Lien Agents with copies of all written reports concerning the status of the Debtors' businesses or the value of the Prepetition Collateral that are provided on or after the Petition Date to the Prepetition First Lien Agents or the DIP Agent.

(e)  **Financial Reporting**.  The Debtors shall continue to provide the Prepetition Agents and the DIP Collateral Agents with all financial and other reporting in full compliance with the Prepetition Credit Facilities.

(f)  **Replacement of Prepetition Agents**.  The Requisite Lenders under and as defined in the applicable Prepetition Credit Agreements shall be entitled at any time, and without prior motion, hearing or order of the Court, to exercise any right under the applicable Prepetition Credit Agreement to replace any Prepetition Agent; provided, however, that the Prepetition First Lien Revolving Loan Administrative Agent cannot be replaced without the prior written consent of the Prepetition First Lien Revolving Lender(s) (as defined below).

(g)  **Issuance of Replacement Letters of Credit and Renewal of Existing Letters of Credit**.  Unless the Debtors otherwise request, none of the Prepetition First Lien Revolving Loan Administrative Agent, the Prepetition First Lien Lenders with a Revolving Commitment (as defined in the Prepetition First Lien Credit Agreement) (the "Prepetition First

Lien Revolving Lender") and the L/C Issuers (as defined in the First Lien Credit Agreement, and hereinafter the "Prepetiton L/C Issuers") shall issue any notice of non-renewal with respect to any Existing Letter of Credit (or any renewal or replacement thereof) or otherwise prevent the renewal of any Existing Letter of Credit (or any renewal or replacement thereof) as long as the expiry date of any such renewed Existing Letter of Credit is on or before November 14, 2013 (any such renewed Existing Letter of Credit or any renewal or replacement of such Existing Letter of Credit, a "Renewed Existing Letter of Credit"). In addition, if any undrawn (or partially undrawn) Existing Letter of Credit (or any renewal or replacement thereof) expires or terminates during the pendency of the Cases, then at the Debtors' request, the applicable Prepetition L/C Issuer will issue, and the Prepetition Revolving Loan Administrative Agent and Prepetition First Lien Revolving Lender will take such actions as are necessary to cause the issuance of, a replacement letter of credit (each, a "Replacement Letter of Credit" and all Replacement Letters of Credit and Renewed Existing Letters of Credit, collectively, the "Renewed/Replacement Letters of Credit") to the same beneficiary of such Existing Letter of Credit pursuant to the applicable provisions of the Prepetition First Lien Credit Agreement, which Replacement Letter of Credit shall be substantially the same as such Existing Letter of Credit except for the expiry date, which date shall be (1) no later than one year after the expiry date of the Existing Letter of Credit and (2) no later than October 15, 2013. Notwithstanding the first two sentences of this Paragraph, none of the Prepetition First Lien Revolving Loan Administrative Agent, the Prepetition First Lien Revolving Lenders and Prepetition L/C Issuers shall be obligated to renew any Existing Letter of Credit (or any renewal or replacement thereof) or issue a Replacement Letter of Credit to the extent that such Renewed/Replacement Letter of Credit would cause the aggregate undrawn amounts of all Renewed/Replacement Letters of Credit and Existing Letters of Credit then outstanding to exceed the Letter of Credit Sublimit then in effect. Notwithstanding the fact that the renewal or issuance date of any Renewed/Replacement Letter of Credit occurs after the Petition Date, and notwithstanding anything to the contrary in the Prepetition First Lien Credit Documents, the Debtors'

29

reimbursement and other payment obligations in respect of each Renewed/Replacement Letter of Credit (i) shall only constitute part of the Prepetition First Lien Obligations and as such shall be secured by the applicable Prepetition Liens and Adequate Protection Liens and entitled to all of the priorities, protections and benefits (including, without limitation, the applicable Adequate Protection Superpriority Claims) accorded the other Prepetition First Lien Obligations, and (ii) shall not constitute an administrative expense or other post-petition obligation of any Debtor and shall not constitute any part of the DIP Obligations. In the event of any post-petition drawing of any Existing Letter of Credit or any Renewed/Replacement Letter of Credit, the Debtors' reimbursement obligation in respect of such drawing shall not become due and payable during the pendency of the Cases but instead shall be paid in accordance with the treatment of the Revolving Loans (as defined in the Prepetition First Lien Credit Agreement) and the Letter of Credit Usage (as defined in the Prepetition First Lien Credit Agreement) as provided in the Consent Agreement.

(h)     **No Other Adequate Protection**.     The Prepetition Revolving Loan Administrative Agent and the Prepetition Revolving Lender shall not be entitled to any adequate protection other than the adequate protection provided in this Order.

5.     **DIP and Adequate Protection Replacement Lien Perfection**.     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Secured Parties and the Prepetition Secured Parties (with respect to the Adequate Protection Replacement Liens) may, each in their sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of

30

the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases. The Debtors shall execute and deliver to the DIP Secured Parties and the Prepetition Secured Parties all such financing statements, mortgages, security agreements, notices and other documents as the DIP Secured Parties and the Prepetition Secured Parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Adequate Protection Replacement Liens. The DIP Agent, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. To the extent that any Prepetition Collateral Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Prepetition Security Document, the DIP Collateral Agents are also deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition Security Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Interim Order and the other DIP Financing Documents. Each Prepetition Collateral Agent shall serve as agent for the DIP Collateral Agents for purposes of perfecting their respective security interests and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party. To the extent the Requisite Lenders under, and as defined in, each Prepetition Credit Agreement have exercised or will exercise their respective rights thereunder to terminate any account control agreement, each Prepetition Collateral Agent shall be deemed to retain a perfected lien on the accounts covered by such account control agreement and all funds and investments therein to the

31

same extent the Prepetition Collateral Agent's prepetition lien thereon was valid, enforceable, and non-avoidable, and with the same priority as existed, on the Petition Date, and notwithstanding any such termination of any account control agreement with respect to the liens securing the Prepetition Obligations, such account control agreement shall remain in full force and effect with respect to the DIP Obligations, and the Prepetition Collateral Agent party to such account control agreement shall continue to serve as the agent for the DIP Agent for all purposes thereunder. Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign or otherwise transfer any such leasehold interest, or proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Financing Documents or this Interim Order. In addition, without limiting the generality of the foregoing, in order to memorialize the subordination of the Prepetition Liens and the Prepetition Obligations consistent with the provisions of this Order, the Prepetition Collateral Agents are hereby authorized to file and record the mortgage amendments entered into as of July 12, 2009, and the automatic stay is hereby modified to permit such filings and recordations.

6. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. Nothing in this Interim Order or the DIP Financing Documents shall prejudice whatever rights any Committee or any other party in interest (other than the Debtors and their non-Debtor subsidiaries) may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the Prepetition Liens on the Prepetition Collateral, or (ii) the validity, allowability, priority, status or amount of the Prepetition Obligations, or (b) to bring suit against any of the Prepetition Lender

Secured Parties in connection with or related to the Prepetition Obligations, or the actions or inactions of any of the Prepetition Lender Secured Parties arising out of or related to the Prepetition Obligations or otherwise; provided that unless any Committee or any other party in interest obtains the requisite standing to commence, and commences, a contested proceeding or an adversary proceeding raising such objection or challenge, including without limitation any claim against the Prepetition Lender Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim or defense to the Prepetition Obligations (including but not limited to those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Lender Secured Parties), by the date that is (a) 60 days following the appointment of the first Committee of unsecured creditors, or (b) if no Committee of unsecured creditors is appointed, 75 days following the Petition Date (collectively, (a) and (b) shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is validly raised during the Challenge Period, shall be referred to as the "Challenge Period Termination Date"; the Challenge Period in respect of the Prepetition Credit Facilities may be extended by written agreement of the applicable Prepetition Administrative Agents and the DIP Agent), upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any Committee, any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and the Prepetition Obligations shall be deemed to be an allowed claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Cases and the findings herein, including in paragraph G, in respect to the Prepetition Liens, the Prepetition Collateral and the Prepetition Obligations shall be binding on all creditors, interest holders and parties in interest. Notwithstanding the foregoing, to the extent any such objection or complaint is filed, such findings herein shall nonetheless remain binding and preclusive on any Committee and on any other person or entity, except to the extent that such assertions were expressly challenged in such objection or complaint. For avoidance of doubt,

nothing in this paragraph imposes any limitation on the ability of the Debtors, the Committee or any other party in interest to assert any objections to the Prepetition Interest Rate Swap Claims or otherwise taking any of the actions described in the first sentence of this paragraph with respect to the Prepetition Interest Rate Swap Claims or the Prepetition Interest Rate Swap Counterparty.

7. **Carve-Out**. Subject to the terms and conditions contained in this paragraph 7, the DIP Liens and DIP Superpriority Claims on the one hand, and the Prepetition Liens and any liens securing the Prepetition Interest Rate Swap Claims, the Adequate Protection Replacement Liens and the Adequate Protection Superpriority Claims, on the other, which have the relative priorities as set forth herein, shall, in any event, be subordinate to the Carve-Out. For purposes of this Interim Order, "Carve-Out" means upon the Carve-Out Date, an amount which may be used subject to the terms of this Interim Order to pay (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (ii) all allowed but unpaid fees and expenses incurred by professionals (collectively, the "Professionals") of the Debtors and any statutory committee appointed in the Cases (each, a "Committee") up to the Carve-Out Cap (as defined below), in each case, whether incurred or allowed prior to, on or after the Carve-Out Date, but unpaid on or after the Carve-Out Date (whether or not allowed prior to, on or after such date), which fees and expenses remain unpaid on or after the Carve-Out Date after application of all unencumbered funds remaining in the Debtors' estates, and are in respect of (A) allowances of compensation for services rendered or reimbursement of expenses awarded by the Court to the Professionals and (B) the reimbursement of expenses allowed by the Court incurred by the Committee members in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members). As used herein, the term "Carve-Out Cap" means the sum of (x) up to $2.0 million for all unpaid and allowed fees and expenses of the Professionals otherwise covered by the Carve-Out other than the Houlihan Success Fee (as defined below)) plus (y) up to $2.1 million for any unpaid portion of the "Bankruptcy Transaction Fee" (as defined in that certain engagement letter between the Borrower and Houlihan Lokey Howard & Zukin Capital, Inc.

34

("Houlihan Lokey"), dated as of November 25, 2008, and hereinafter the "Houlihan Success Fee") that has become due and payable in accordance with the terms of such engagement letter, but only to the extent, and at such time that, either the Plan (as defined in the Consent Agreement) or any other plan of reorganization accepted by the class of Prepetition First Lien Lenders under the Prepetition First Lien Credit Agreement has been confirmed and become effective. Notwithstanding the foregoing, (x) the Carve-Out Cap shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the occurrence of the Carve-Out Date in respect of which the Carve-Out is invoked or by any fees, expenses, indemnities or other amounts paid to any agent or lender (or any of their respective attorneys or agents under the Prepetition Credit Facilities, the DIP Facilities or otherwise), (y) following the Carve-Out Date, any amounts paid to professionals by any means will reduce the Carve-Out Cap on a dollar-for-dollar basis, and (z) nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (A) and (B) in the second sentence of this Paragraph. As used herein "Carve-Out Date" means the date that is the earlier of (x) the Debtors' receipt of a written notice from the DIP Agent (with a copy to be sent to counsel for the Committee and the U.S. Trustee) under the DIP Credit Agreement or any other DIP Financing Documents that an Event of Default or Termination Event (as defined in the Consent Agreement) has occurred and that the DIP Agent has triggered the Carve-Out or (y) Maturity Date (as defined in the DIP Credit Agreement). The DIP Agent shall be entitled to maintain reserves against borrowing availability on account of the Carve-Out as may be more fully provided in the DIP Credit Agreement and the other DIP Financing Documents. No portion or the Carve-Out, any Cash Collateral or proceeds of the DIP Facilities or any other amounts may be used for the payment of the fees and expenses of any person incurred in challenging, or in relation to the challenge of, (i) any of the Prepetition Agents', Prepetition Lenders', DIP Agent's or DIP Lenders' liens or claims (or the value of their respective Prepetition Collateral or DIP Collateral), or the initiation or prosecution of any claim or action against any Prepetition Agents, Prepetition

Lenders, DIP Agent or DIP Lenders, including any claim under Chapter 5 of the Bankruptcy Code, and state law or any foreign law, in respect of any of the Prepetition Credit Facilities or the DIP Facilities, and (ii) any claims or causes of actions against the Prepetition Agents, Prepetition Lenders, DIP Agent or DIP Lenders under the Prepetition Credit Facilities or the DIP Facilities (as the case may be), their respective advisors, agents and sub-agents, including formal discovery proceedings in anticipation thereof, and/or challenging any Prepetition Lien or DIP Lien. No more than $10,000 in the aggregate of the Carve-Out, any Cash Collateral or proceeds of the DIP Facilities may be used by any Committee or any representative of the estate (other than the Debtors) to investigate claims and/or liens of the Prepetition Agents, Prepetition Lenders, DIP Agent or DIP Lenders under, as the case may be, the Prepetition Credit Facilities or the DIP Facilities.

8. **Payment of Compensation**. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors or any Committee or shall affect the right of the DIP Secured Parties or the Prepetition Agents to object to the allowance and payment of such fees and expenses.

9. **Section 506(c) Claims**. Subject to entry of the Final Order, as a further condition of the DIP Facilities and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Financing Documents, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Cases) shall be deemed to have waived any rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Agent, the DIP Secured Parties, the DIP Liens, the Prepetition Agents, the Prepetition Secured Parties and the Prepetition Liens. Nothing contained in this Interim Order or in the Final Order shall be deemed a consent by the Prepetition Secured Parties or the DIP Secured Parties to any charge, lien, assessment or claim against the DIP Collateral or the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise.

10. **Collateral Rights**. Unless the DIP Agent has provided its prior written consent or all DIP Obligations have been indefeasibly paid in full in cash (or will be indefeasibly paid in full in cash upon entry of a final, non-appealable order approving indebtedness described in subparagraph (a) below or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agent in its sole discretion have been made) and all Commitments (under and as defined in the DIP Credit Agreement) have terminated, there shall not be entered at any time in these proceedings, or in any Successor Case, any order which authorizes any of the following:

(a) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Interim Order to the DIP Secured Parties; or

(b) the use of Cash Collateral for any purpose other than to indefeasibly pay in full in cash the DIP Obligations or as otherwise permitted in the DIP Credit Agreement.

11. **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of paragraph 10 above, if at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and the termination of the DIP Secured Parties' obligations to make loans and advances under the DIP Facilities (including subsequent to the confirmation of any Chapter 11 plan or plans (the "Plan") with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Credit Agreement, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent in permanent reduction of the DIP Obligations in accordance with the relative rights, claims, and priorities specified herein and in the DIP Financing Documents.

12. **Cash Collection**. Cash collections (including, but not limited to, payments from customers with respect to accounts receivable) constituting proceeds of DIP Collateral shall be directed to lock-box and/or deposit accounts ("cash collection accounts") under the sole

37

dominion and control of the First Lien Collateral Agent (acting for, and at the direction of, the DIP Agent pursuant to a structure reasonably satisfactory to the DIP Agent. Upon the direction of the DIP Agent at any time after the occurrence of an Event of Default, all proceeds in the cash collection accounts shall be remitted to the DIP Agent for application to the DIP Obligations, and the First Lien Collateral Agent shall take all action as directed by the DIP Agent that is necessary or appropriate to effectuate the foregoing. The Debtors and the financial institutions where the Debtors' cash collection accounts are maintained, including Wells Fargo Bank, N.A. and Branch Banking & Trust, are authorized and directed to remit funds in such cash collection accounts upon receipt of any direction to that effect from the First Lien Collateral Agent or the DIP Agent. Any obligations of the Debtors for treasury, depositary or cash management services, including without limitation, overnight overdraft services, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services, provided postpetition by any financial institution at which any cash collection account is maintained shall be secured by a lien senior to the DIP Lien on the funds in the cash collection accounts at such financial institution.

13.     **Disposition of DIP Collateral**.   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the requisite DIP Secured Parties required under the DIP Credit Agreement (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Secured Parties or an order of this Court), except for sales of inventory in the ordinary course of business or except as otherwise provided for in the DIP Credit Agreement, other DIP Financing Documents and this Interim Order and approved by the Court to the extent required under applicable bankruptcy law.

14.     **Events of Default**.  Unless and until the DIP Obligations are indefeasibly paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory (in its sole discretion) to the DIP Agent have been made) and all Commitments under, and as defined in, the DIP Credit Agreement have irrevocably terminated, and all DIP Obligations that survive

termination (including, without limitation, all contingent indemnification provisions in favor of the DIP Secured Parties) have been cash-collateralized to the reasonable satisfaction of the DIP Agent, the protections afforded to the Prepetition Secured Parties and the DIP Secured Parties pursuant to this Interim Order and under the other DIP Financing Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting these cases into a Successor Case, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claims shall continue in these proceedings and in any Successor Case, and such DIP Liens, DIP Superpriority Claims, Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claims shall maintain their respective priority as provided by this Interim Order.

      15.    **Rights and Remedies Upon Event of Default**.

      (a)    Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, without requiring prior authorization of this Court, to the extent necessary to permit the DIP Secured Parties to exercise (i) immediately upon the occurrence of an Event of Default or Termination Event (as defined in the Consent Agreement), all rights and remedies under this Interim Order, the DIP Financing Documents and the Consent Agreement other than those rights and remedies against the DIP Collateral as provided in clause (ii) below and (ii) upon the occurrence and during the continuance of an Event of Default or a Termination Event and the giving of five business days' prior written notice to the Debtors (with a copy to counsel to any Committee and to the United States Trustee), all rights and remedies against the DIP Collateral provided for in any DIP Financing Documents, the Consent Agreement or applicable law (including, without limitation, the right to set off against accounts maintained by the Debtors with the DIP Agent or any DIP Lender or affiliate thereof); provided, however, that notwithstanding anything to the contrary in clause (ii) above, immediately following the giving of notice by the DIP Agent of the occurrence of an Event of Default or Termination Event: (w) the Debtors shall deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Agent as provided in the DIP Financing Documents; (x) the DIP Agent shall apply such proceeds

in accordance with the provisions of the DIP Financing Documents; (y) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the DIP Obligations and the payment of the Carve-Out, as provided herein and in the applicable DIP Financing Documents; and (z) any obligation otherwise imposed on the DIP Agent or the DIP Secured Parties to provide any loan, advance or other financial accommodation to the Debtors pursuant to the DIP Facilities shall immediately be suspended. Following the giving of written notice by the DIP Agent of the occurrence of an Event of Default or Termination Event, the Debtors and any Committee shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default or Termination Event has occurred, and section 105 of the Bankruptcy Code may not be invoked by the Debtor, the Committee or any other party in interest to restrict or preclude any DIP Secured Party from exercising any rights or remedies set forth in the Consent Agreement, this Interim Order or the DIP Financing Documents. If the Debtors or any Committee do not contest the right of the DIP Secured Parties to exercise their remedies based upon whether an Event of Default or Termination Event has occurred within such five business-day time period or if the Debtors or any Committee do timely contest the occurrence of an Event of Default or a Termination Event and the Court after notice and hearing declines to find that no such Event of Default or Termination Event has occurred, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period.

(b)    Subject to the provisions of paragraph 15(a), upon the occurrence of an Event of Default or Termination Event, the DIP Agent and DIP Lenders are authorized to exercise their remedies and proceed under or pursuant to the DIP Financing Documents and the Consent Agreement. All proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties shall be turned over to the DIP Agent for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Financing Documents; provided, that in the event of the liquidation or the Debtors' estates after an Event of Default or Termination Event and the termination of the Commitments under (and as defined in) the DIP

40

Credit Agreement, the amount of the Carve-Out shall be funded into a segregated account exclusively first, from unencumbered cash or proceeds of unencumbered assets, if any.

(c)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Parties and the DIP Secured Parties under the DIP Financing Documents, the DIP Facilities and this Interim Order, (ii) authorize the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments hereunder, and (iii) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order.

(d)     Nothing included herein shall prejudice, impair, or otherwise affect Prepetition Secured Parties' or DIP Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors (including other or additional adequate protection) nor the DIP Agent's or DIP Lenders' rights, as provided in the DIP Credit Agreement, to suspend or terminate the making of loans or other financial accommodations under the DIP Credit Agreement; provided, however, that any such other or supplemental relief (including other or additional adequate protection) shall at all times be subordinate and junior to the DIP Obligations, the DIP Liens and the DIP Superpriority Claim.

(e)     The delay or failure to exercise rights and remedies under the DIP Financing Documents or this Interim Order by any of the DIP Secured Parties shall not constitute a waiver of such DIP Secured Party's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Financing Documents.

16.     **Proofs of Claim, etc.** The Prepetition Lenders and the DIP Secured Parties will not be required to file proofs of claim in the Cases or in any Successor Case.

17.  **Other Rights and Obligations**.

(a)  **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order**.  Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facilities contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code, and, no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Liens and DIP Superpriority Claims granted to the DIP Secured Parties shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens and DIP Superpriority Claims granted herein, with respect to any such claim.  Since the loans made pursuant to the DIP Credit Agreement are made in reliance on this Interim Order, the obligations owed the DIP Secured Parties prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Interim Order and/or the DIP Financing Documents.

(b)  **Expenses**.  As provided in the DIP Financing Documents, the Debtors will pay all reasonable expenses incurred by each DIP Agent, the Backstop Lenders and each Lender (including, without limitation, the reasonable fees and disbursements of counsel for the DIP Agent and each Backstop Lender, any other local or foreign counsel that such DIP Agent and such Backstop Lenders shall retain and any internal or third-party appraisers, consultants and

42

auditors advising such DIP Agent's and such Backstop Lenders' counsel) in connection with the preparation, execution, delivery and administration of the DIP Financing Documents, whether or not the transactions contemplated hereby are consummated. Payment of such fees shall not be subject to allowance by the Court. Professionals for the DIP Secured Parties or Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines. Copies of invoices submitted to the Debtors by the professionals for the DIP Secured Parties or the Prepetition Secured Parties shall be forwarded by the Debtors to the U.S. Trustee, counsel for any Committee, and such other parties as the Court may direct. The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential or sensitive information). If the Debtors, U.S. Trustee or counsel for any Committee object to the reasonableness of the fees and expenses of the professionals for the DIP Secured Parties or Prepetition Secured Parties and cannot resolve such objection within five (5) days of receipt of such invoices, the Debtors, U.S. Trustee or the Committee, as the case may be, shall file and serve on such Professional an objection with the Court (the "**Fee Objection**") limited to the issue of reasonableness of such fees and expenses. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed.

(c) **Binding Effect**. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Secured Parties and the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 or Chapter 7 Case.

(d) **No Waiver**. The failure of the Prepetition Secured Parties and the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Financing Documents, the DIP Facilities, this Interim Order or otherwise, as applicable, shall not

constitute a waiver of any of the Prepetition Secured Parties' and the DIP Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights or remedies of the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Secured Parties and the DIP Secured Parties (i) to request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, or (ii) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties, including against any non-Debtor entity. Neither the commencement of the Cases nor the entry of this Interim Order shall limit or otherwise modify the rights and remedies of the Prepetition Secured Parties with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition Credit Facilities, applicable law or equity.

(e) **No Third Party Rights**. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(f) **No Marshaling**. Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(g) **Section 552(b)**. The DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

(h) **Amendment**. The Debtors and the DIP Agent (with the consent of such Lenders required pursuant to the DIP Credit Agreement) at any time may amend, modify,

supplement or waive any provision of the DIP Financing Documents without further approval of the Court, unless such amendment, modification, supplement or waiver (x) increases the interest rate (other than as a result of the imposition of the default rate), (y) increases the Commitments of the DIP Lenders under the DIP Financing Documents, or (z) changes the Maturity Date (as defined in the DIP Credit Agreement). Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of all the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties as provided in the DIP Financing Documents) and approved by the Court.

(i) **Survival of Interim Order**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Cases, (ii) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Cases, (iv) withdrawing of the reference of any of the Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Interim Order, including the DIP Liens and DIP Superpriority Claims granted pursuant to this Interim Order and the DIP Financing Documents and any protections granted the Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens and DIP Superpriority Claims and protections for the Prepetition Secured Parties shall maintain their priority as provided by this Interim Order until all the obligations of the Debtors to the DIP Lenders pursuant to the DIP Financing Documents and the Prepetition Obligations have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facilities which survive such discharge by their terms). The DIP Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

(j) **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Financing Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(k) **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(l) **No Waivers or Modification of Interim Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Agent and the Prepetition Agents acting at the direction of the Requisite Lenders under, and as defined in, the applicable Prepetition Credit Agreement) and no such consent shall be implied, by any other action, inaction or acquiescence of the DIP Agent and the Prepetition Agents.

(m) **Waiver of any Applicable Stay**.  Any applicable stay (including, without limitation, under Interim Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

18. **Final Hearing**.

(a) The Final Hearing to consider entry of the Final Order and final approval of the DIP Facilities is scheduled for _____ [___], 2009, at _____ (EST) at the United States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b) On or before _____ [___], 2009 the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  The Final Hearing Notice shall state that any party in

interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than _____ [__], 2009 at 4:00 pm (Eastern time), which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors; (b) counsel for the DIP Agent; (c) counsel for the Prepetition Agents; (d) counsel to any Committee; and (e) the U.S. Trustee.

        (c)     **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by the Bankruptcy Court this _____ day of July, 2009.

 

                                       _____

                                       UNITED STATES BANKRUPTCY JUDGE